UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| REBA JONES, | ) |
| Plaintiff, | ) |
| | ) NO. 2:14-cv-00026 |
| v. | ) Judge Sharp |
| | ) Magistrate Judge Frensley |
| NANCY BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OF OPINION

Pending before the Court is Plaintiff Reba Jones ("Jones") Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 17), filed with a Memorandum in Support (Doc. No. 18). Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition to Jones' Motion (Doc. No. 21). This case was referred to Magistrate Judge Frensley, but the Court hereby withdraws that referral. In addition, upon consideration of the Parties' filings and the transcript of the administrative record (Doc. No. 11),[1] and for the reasons given below, the Court will **DENY** Jones' Motion.

### I. Introduction

On June 20, 2012 Jones filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act, alleging a disability onset of April 20, 2012. (A.R. 174.) Jones' claim was denied at the initial and reconsideration stages of state agency review. Jones subsequently requested *de novo* review of his case by an Administrative Law Judge ("ALJ"). The ALJ heard

---

[1] Referenced hereinafter by page number(s) following the abbreviation "A.R."

1

the case on September 30, 2013, when Jones appeared, was represented by an attorney, and gave testimony. (Id. at 39.) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the matter was taken under advisement until October 25, 2013, when the ALJ issued a written decision finding Jones not disabled. (Id. at 21.) That decision contains the following enumerated findings:

1. Jones meets the insured status requirements of the Social Security Act through December 31, 2017.

2. Jones has not engaged in substantial gainful activity since the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. Jones has the following severe impairments: status post bilateral carpal tunnel release surgeries; learning disability; and depressive disorder (20 C.F.R. 404.1520(c) and 416.920(c)).

4. Jones does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. Jones has the residual functional capacity ("RFC") to lift 10 pounds occasionally and frequently; stand and/or walk six hours in an eight-hour day; sit up to six hours; occasionally climb ramps and stairs; occasionally balance, kneel, stoop, crouch, and crawl; frequently but not constantly handle and finger with the bilateral upper extremities; and perform simple tasks in which reading and writing are not essential. However, she should avoid climbing ladders, ropes, and scaffolds and other heights and hazards and should work in a setting where changes in the workplace are infrequent and gradually introduced.

6. Jones is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. Jones was born on January 13, 1967 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. Jones has a marginal education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because Jones' past relevant work is unskilled (20 C.F.R. 404.1568 and 416.968).

10. Considering Jones' age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that she can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, 416.969(a)).

11. Jones has not been under a disability within the meaning of the Social Security Act from April 20, 2012 through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Id. at 23–32.)

On January 2, 2014, the Appeals Council denied Jones' request for review of the ALJ's decision, thereby rendering that decision the final decision of the SSA. (Id. at 6.) This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. Review of Record

Although Jones' claim alleged various musculoskeletal conditions, her Motion before this Court centered on her mental impairments, specifically, her intellectual abilities, as evidenced by her IQ and literacy. (Doc. No. 18, p. 12–14.) Consequently, the Court adopts the summary of her records, as they pertain to her mental impairments, from the ALJ's decision. (A.R. 30–31.)

## III. Conclusions of Law

### A. Standard of Review

This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." Brooks v. Comm'r of Soc. Sec., 531 F. App'x 636, 641 (6th Cir. 2013) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. See Hernandez v. Comm'r of Soc.

Sec., 644 F. App'x 468, 473 (6th Cir. 2016 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." Miller, 811 F.3d at 833 (quoting Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 722 (6th Cir. 2014)).

**B. Five-Step Inquiry**

The claimant bears the ultimate burden of establishing entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). The SSA considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1. A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. A claimant who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to

4

> Subpart B of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4. A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Parks v. Soc. Sec. Admin., 413 F. App'x 856, 862 (6th Cir. 2011) (citing Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity[.]" Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 628 (6th Cir. 2016) (quoting Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004)).

The SSA can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. See Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 35 (6th Cir. 2010); Wright v. Massanari, 321 F.3d 611, 615–16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. Wright, 321 F.3d at 615–16; see Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony.

Anderson, 406 F. App'x at 35; see Wright, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the SSA must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Glenn v. Comm'r of Soc. Sec., 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Weighing Medical Source Evidence

The administrative regulations implementing the Social Security Act impose standards on the weighing of medical source evidence. Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011). The significant deference accorded to the Commissioner's decision is conditioned on the ALJ's adherence to these governing standards. In Gentry v. Commissioner of Social Security, the Sixth Circuit re-stated the responsibilities of the ALJ in assessing medical evidence in the record in light of the treating source rule:

> Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1512(b); 20 C.F.R. § 404.1513. The second is known as the "treating physician rule," see Rogers, 486 F.3d at 242, requiring the ALJ to give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (language moved to 20 C.F.R. § 404.1527(c)(2) on March 26, 2012). The premise of the rule is that treating physicians have the best detailed and longitudinal perspective on a claimant's condition and impairments and this perspective "cannot be obtained from objective medical findings alone." 20 C.F.R. § 416.927(d)(2) (language moved to 20 C.F.R. § 416.927(c)(2) on March 26,

> 2012). Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors. Rogers, 486 F.3d at 242. In all cases, the treating physician's opinion is entitled to great deference even if not controlling. Id. The failure to comply with the agency's rules warrants a remand unless it is harmless error. See Wilson, 378 F.3d at 545–46.

741 F.3d 708, 723 (6th Cir. 2014).

The Sixth Circuit has also made clear that an ALJ may not determine the RFC by failing to address portions of the relevant medical record, or by selectively parsing that record—*i.e.*, "cherry-picking" it—to avoid analyzing all the relevant evidence. Id. at 724 (citing Minor v. Comm'r of Soc. Sec., 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); Germany-Johnson v. Comm'r of Soc. Sec., 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports.")). This is particularly so when the evidence ignored is from a treating physician. Ignoring medical evidence from a treating source in fashioning the RFC, without a proper analysis of why such action is taken, cannot be harmless error because it "undermines [the ALJ's] decision" to overlook evidence that could have potentially supported a more restrictive RFC or even a finding of disability. Gentry, 741 F.3d at 729 (citations omitted); Grubbs v. Comm'r of Soc. Sec., No. 12–14621, 2014 WL 1304716, at *2 (E.D. Mich. Mar. 31, 2014) ("The absence of a review of treatment records from a treating source and the lack of analysis of such made it impossible for the ALJ to properly assess whether the Plaintiff was disabled and/or whether Plaintiff had the residual functional capacity to do any work.").

**D. Jones' Statement of Errors**

7

### 1. The ALJ Erred in Failing to Find Jones Disabled Pursuant to Listing 12.05C.

Jones contends that the ALJ failed to "directly discuss listing 12.05C." (Doc. No. 18, p. 12.) Listing 12.05 is an intellectual disorder characterized by the following three elements: "significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning; and the disorder manifested before age 22." 20 C.F.R. § 404, Appx. 1, Part A2, H1. Jones claims that she meets each prong and that, because this was step five of the five-part test for determining disability, the burden was on the ALJ to prove her disability. (Doc. No. 18, pp. 12–13.)

As a preliminary matter, Jones incorrectly characterizes the sequential step and burden of proof. The ALJ determined that Jones did not have an impairment or combination of impairments that meets or medically equals the listings. (A.R. 24.) The Listings are not considered at Step Five and the burden is on the claimant. Parks, 413 F. App'x at 862; 20 C.F.R. §§ 404.1520(a) (e); Kepke, 636 F. App'x at 628. As to prong one, Jones claims, without citation to any medical records, that she has an IQ of 69 and, therefore, has "significantly subaverage general intellectual functioning" under Listing 12.05. (Doc. No. 18, pp. 12–13.) While Listing 12.05 identifies "significantly subaverage general intellectual functioning" by IQ testing scores, tests must be administered by a qualified specialist. 20 C.F.R. § 404, Appx. 1, Part A2, H2(a). As Jones has not indicated who administered her IQ test, the Court cannot determine whether it demonstrates "significantly subaverage general intellectual functioning" for purposes of the Listing. The Court need not address the remaining two prongs of Listing 12.05, as Jones' failure to cite anything in the record supporting her claims of "significantly subaverage general intellectual functioning" precludes her from establishing the same. Accordingly, the ALJ's failure to "directly discuss listing 12.05C" is harmless. (Doc. No. 18, p. 12.)

### 2. The ALJ Erred in Failing to Find Jones Illiterate and Meeting Grid Rule 201.17.

Jones claims that she "is illiterate and at a reduced capacity to less than sedentary work [under] . . . Grid Rule 201.17." (Doc. No. 18, p. 14.) A claimant will be disabled under Grid Rule 201.17 if she is between 45 and 49 years of age, illiterate or unable to communicate in English, unskilled or without skill, and relegated to sedentary work. 20 C.F.R. § 404, Appx. 2, Table 1. Under 20 C.F.R. § 404.1567(a),

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Whereas, 20 C.F.R. § 404.1564(b)(1) defines illiteracy as "the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." Illiteracy is one of several categories used to describe a claimant's educational level. 20 C.F.R. § 404.1564(b). However, educational level is a factor assessed, in conjunction with daily activities, hobbies, or results of testing, that indicates a claimant's ability to meet vocational requirements such as reasoning ability, communication skills, and arithmetical ability. Id. at (a).

It is undisputed that Jones is between 45 and 49 years of age and unskilled. (A.R. 31.) Whether she is, in fact, able to perform more than sedentary work is unclear. It appears that she does not qualify for light work because she can only lift 10 pounds (id. at 26), however, it also appears that her RFC encompasses fewer standing and walking limitations (id.) than the sedentary description. 20 C.F.R. § 404.1567(a). Assuming, *arguendo*, that Jones is only capable of sedentary work, the Court turns to the question of whether she is illiterate pursuant to 20 C.F.R. § 404.1564(b)(1).

The ALJ found that Jones has "marginal education and is able to communicate in English." (A.R. 31.) Under 20 C.F.R. § 404.1564(b)(2) "[m]arginal education means the ability in reasoning, arithmetic, and language skills needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education." The school records submitted from the White County Board of Education appear to be from a sixth grade school register for the years 1982 through 1983, during which time Jones would have been 15 and 16 years old. (A.R. 194.) They reflect that Jones received failing grades in Spelling, English, Social Studies, Arithmetic, Science, and Health and C's in Writing and Reading. (Id. at 195–7.) Consequently, Jones has "formal education at the 6th grade level or less." 20 C.F.R. § 404.1564(b)(2).

While Jones may have formal education that is "generally" considered marginal education, that does not necessarily mean that she has the corresponding "reasoning, arithmetic, and language skills needed to do simple, unskilled types of jobs." 20 C.F.R. § 404.1564(b)(2). Indeed, her school records show that she was between 15 and 16 years old in sixth grade—at least three years older than her peers—and failed most of her classes. (A.R. 194.) Moreover, her inferior reasoning, arithmetic, and language skills are bolstered by hearing testimony and consultative psychological examinations in which she claimed that she repeated third, fourth, and fifth grade, failed several grades, and was enrolled in special education classes. (Id. at 43, 666.)

Psychological evaluations performed in 2013 in conjunction with Jones' claim corroborate Jones' statements. On April 8, 2013, Dr. Kathryn Galbraith, Ph.D, concluded that Jones "appears to fall into the low average range of intellectual functioning. She showed evidence of moderate impairment in her short term memory . . . her ability to sustain concentration . . . her long-term and remote memory functioning . . . mild impairment in her

social relating . . . ability to adapt to change . . . appears to need assistance in handling her finances." (Id. at 669.) On September 25, 2013, Jerell F. Killian, M.S., performed the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV) and the Wide Range Achievement Test, Fourth Edition (WRAT-4) on Jones, which showed that she had a grade equivalent of 1.4 in reading, 2.0 in spelling, and 1.7 in arithmetic and concluded that Jones' "perceptual reasoning and processing speed are within the borderline range which is above retardation but below average. All other scores are within the mild mental retardation range. The range of functioning is consistent with her history." (Id. at 742–743.) Jones cites the WRAT-4 results, along with her inability to read a menu board at McDonald's, use a checkbook, multiply and divide, as evidence of her illiteracy. (Doc. No. 18, p. 14.)

Although Jones' academic and psychological testing records indicate inferior "reasoning, arithmetic, and language skills[,]" whether she is illiterate under the SSA depends upon whether she had "the reasoning, arithmetic, and language skills needed to do simple, unskilled types of jobs." 20 C.F.R. § 404.1564(b)(2). Indeed, the ALJ noted that Jones' statements and test scores were inconsistent with her "adaptive functioning" because she "was able to work as a self-employed house cleaner at the substantial gainful activity level in 2004 and from 2006 through 2011 and had wages at the substantial activity level in 2012." (A.R. 30–31.) The ALJ also noted that Jones' own testimony—that she could use a computer for email—and conduct—by completing multiple questionnaires in connection with the instant claim—demonstrated basic literacy. (Id. at 31.) The Court may not reverse the ALJ even if the record contains evidence supporting the opposite conclusion. See Hernandez, 644 F. App'x at 473. Here, while Jones' record reflects competing interpretations of her mental abilities, the Court must accept the ALJ's conclusion that Jones is has "marginal education" as it is supported by "'relevant evidence . . . a

11

reasonable mind might accept as adequate to support a conclusion.'" Miller, 811 F.3d at 833 (quoting Buxton, 246 F.3d at 772). Consequently, Jones is not illiterate or unable to communicate in English and, therefore, is not disabled under Grid Rule 201.17. 20 C.F.R. § 404, Appx. 2, Table 1.

### 3. The ALJ Erred in Finding that There Were Sufficient Jobs in the Regional or National Economy Jones Could Perform.

Jones claims that the vocational expert's identification of 1,850 jobs in Tennessee and 66,000 nationally that she could perform is not a sufficient number of jobs. (Doc. No. 18, p. 15 (citing Mackins v. Astrue, 655 F.Supp.2d 770 (W. D. Ky. 2009) (in which the district court remanded a case holding that 60,000 jobs nationally did not constitute significant numbers).) However, the Sixth Circuit has since distinguished Mackins, clarifying that the district court "doubted that the occupation for which the ALJ though the claimant was qualified was consistent with the claimant's functional limitations . . . [and] whether, in view of the changes in the economy, 60,000 jobs even existed within the identified occupation." Taskila v. Comm'r Soc. Sec., 819 F.3d 902, 906 (6th Cir. 2016) (citing Mackins, 655 F.Supp.2d at 778). Moreover, as Commissioner notes, there is "no 'magic number' in evaluating whether a job exists in significant numbers." (Doc. No. 21, p. 8 (citing Doran v. Comm'r Soc. Sec., 467 Fed. Appx. 446, 449 (6th Cir. 2012) (internal citations omitted)).) Furthermore, the Sixth Circuit has held that 870 jobs in a claimant's geographic region constitute a significant number. Martin v. Comm'r Soc. Sec., 170 Fed. Appx. 369, 375 (6th Cir. 2006). Consequently, Jones' argument in this regard is without merit.

### IV. Recommendation

For the reasons explained above, Jones' Motion for Judgment on the Administrative

Record (Docket No. 17) will be **DENIED**.  An appropriate order will be filed herewith.

_____
KEVIN H. SHARP, CHIEF JUDGE
UNITED STATES DISTRICT COURT